IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

HURST BOILER & WELDING
COMPANY, INC.,

      Plaintiff,

v.

EVANSTON INSURANCE
COMPANY,

      Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

CASE NO.: 7:25-CV-51 (LAG)

## ORDER

Before the Court are Defendant Evanston Insurance Company's Partial Motion to Dismiss for Failure to State a Claim and Brief in Support (Partial Motion to Dismiss) (Doc. 7) and Motion for Hearing on Partial Motion to Dismiss for Failure to State a Claim (Motion for Hearing) (Doc. 8). For the reasons below, the Partial Motion to Dismiss is **GRANTED** and the Motion for Hearing is **DENIED**.

## BACKGROUND

This suit arises from a claim for damages under an insurance contract.[1] On April 23, 2025, Plaintiff Hurst Boiler & Welding Co., Inc. filed a Complaint against Defendant Evanston Insurance Company alleging breach of insurance contract. (Doc. 1). Defendant issued Plaintiff Policy No. MMAENV002061 (the Policy), for a coverage term of September 24, 2020 to September 24, 2022. (*Id.* ¶ 4; *see* Doc. 1-1). The Policy includes Professional Services Liability coverage, subject to its terms and conditions. (Doc. 1 ¶ 4; *see* Doc. 1-1 at 40–44). The Policy provides, in relevant part, that the "[insurer] will pay those sums that the insured becomes legally obligated to pay as 'damages' arising out of

---

[1]     On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all facts alleged in Plaintiff's Complaint (Doc. 1) as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Anderson v. Wilco Life Ins.*, 17 F.4th 1339, 1344 (11th Cir. 2021) (citation omitted).

an act, error, or omission committed by the insured, or on behalf of the insured, to which this insurance applies." (Doc. 1-1 at 40). "Damages" is defined as "a monetary judgment (including pre and post judgment interest), award or settlement, including punitive or exemplary damages where insurable by law." (*Id.* at 44). By the terms of the Policy, "damages" does not include "[c]laimaints' attorneys' fees or damages awarded for breach of contract, except attorneys' fees awarded for the successful prosecution of a 'claim' otherwise covered by [the Policy]." (*Id.*).

The underlying matter for which Plaintiff claims it is entitled to coverage arises out of an Equipment Engineering, Procurement and Construction Purchase Contract (EPC Contract) between Plaintiff and Carolina Poultry Power RG1, LLC (Carolina). (Doc. 1 ¶ 5). The EPC Contract concerned the "design, construction and operation" of a project in Farmville, North Carolina. (*Id.*). The design, construction, testing, and initial operations on the project continued from 2018 through 2021. (*Id.* ¶ 6). On January 6, 2022, Carolina terminated the contract with Plaintiff for alleged default; and on January 10, 2023, Carolina initiated an arbitration action (the Arbitration) against Plaintiff. (*Id.*; *see* Doc. 1-2 at 3). In the Arbitration, Carolina alleged (1) breach of contract, (2) engineering and design negligence, (3) contractual indemnity, and (4) unfair and deceptive trade practices. (Doc. 1-2 at 3–4). Upon receipt of Carolina's Statement of Claim filed in the Arbitration, Plaintiff "tendered its defense to [Defendant] under the Policy[.]" (Doc. 1 ¶ 7). Defendant agreed to defend Plaintiff under a "Reservation of Rights to subsequently deny any duties of defense or indemnity" and opted not to provide assigned defense counsel for Plaintiff. (*Id.*). Defendant further instructed Plaintiff to retain legal counsel to defend Carolina's claims against it. (*Id.*). During the Arbitration, Defendant indemnified Plaintiff "for a portion of the defense fees and costs, . . . but not all of the fees and costs necessarily incurred to defend the Arbitration action." (*Id.* ¶ 8).

On or about November 1, 2024, the Arbitration panel issued its Arbitration Award. (*Id.* ¶ 9; *see* Doc. 1-2). The Arbitration Award provided, in relevant part, that Carolina was "entitled to an award of . . . damages for [Plaintiff's] breaches of contract[.]" (Doc. 1-2 at 68). Plaintiff was obligated to pay the damages award of $2,331, 202.00 plus daily accruing

2

interest on the principal sums awarded as set forth in the Arbitration Award. (Doc. 1 ¶ 9; Doc. 1-2 at 69). The Arbitration Award further determined that Carolina "shall receive nothing" on any of its negligence claims, indemnity claims, or unfair and deceptive trade practices claims. (Doc. 1-2 at 68–69).

Plaintiff filed the above-captioned matter on April 23, 2025. (Doc. 1). Plaintiff alleges that Defendant has breached the Policy because it (1) failed and refused to fully and properly indemnify Plaintiff for defense fees and costs associated with the Arbitration, and (2) failed and refused to fully indemnify Plaintiff for its professional services liability as determined by the Arbitration. (*Id.* ¶ 11). On May 29, 2025, Defendant filed a Partial Motion to Dismiss and a Motion for Hearing. (Docs. 7, 8). After receiving an extension, Plaintiff timely filed a Response to the Partial Motion to Dismiss on July 3, 2025. (Doc. 18; *see* Docket). Defendant filed a Reply on July 16, 2025. (Doc. 19). Thus, the Partial Motion to Dismiss is ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)[2], "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face if the complaint alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A complaint must plead "enough fact[s] to

---

[2] The Court notes that Defendant's Answer was filed on the same day Defendant filed its Partial Motion to Dismiss. (Docs. 6, 7). Defendant raises the defense of failure to state a claim both in the Answer and Motion to Dismiss. (Doc. 6 at 7; *see generally* Doc. 7). Generally, where a defendant asserts a failure to state a claim defense in the Answer, it cannot "assert the defense in a Rule 12(b)(6) motion" as the Motion would be untimely. *Whitehurst v. Wal–Mart Stores East, L.P.*, 329 F. App'x 206, 208 (11th Cir. 2008) (per curiam). When that occurs, the Court "may construe the Rule 12(b)(6) motion as one seeking judgment on the pleadings under Rule 12(c)." *Id.* (citation omitted). "[W]hen construed as a Rule 12(c) motion for judgment on the pleadings, [Defendant's] motion would be timely." *Id.* As the Answer and Motion essentially were filed simultaneously and as "[a] motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss," the Court will deem the Motion to Dismiss as timely filed. *U.S. v. Wood*, 925 F.2d 1580, 1581 (11th Cir. 1991) (per curiam) (citation omitted); *see also Everidge v. Wells Fargo Bank*, No. 5:12-CV-497(LJA), 2015 WL 5786738, at *8 n.8 (M.D. Ga. Sept. 29, 2015).

raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. The Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff[,]" but the same liberal reading does not apply to legal conclusions. *Anderson*, 17 F.4th at 1344–45 (first citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010); and then citing *Iqbal*, 556 U.S. at 678). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery[.]" *Iqbal*, 556 U.S. at 678–79. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

<strong>DISCUSSION</strong>

## I.   Partial Motion to Dismiss

Defendant argues that Plaintiff's claim alleging that Defendant failed to indemnify Plaintiff for the Arbitration Award should be dismissed under the terms of the Policy. (Doc. 7 at 6). "As the Court's jurisdiction in this matter is based on diversity of citizenship, the Court must apply the choice of law rules of the forum state—Georgia." *Elder v. Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221, 1230 (N.D. Ga. 2021) (citing *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008)). Georgia generally follows the *lex loci contractus* choice of law rule governing contracts; however, "unless the law of the foreign jurisdiction is contrary to Georgia public policy or the foreign jurisdiction has no substantial relationship with the parties or the transaction[,]" Georgia courts will uphold choice of law provisions stipulated to in contractual agreements. *Eudy v. GCM Coastal, LLC*, No. 1:22-CV-2418-MHC, 2023 WL 6371015, at *4 (N.D. Ga. 2023) (first citing *Federated Rural Elect. Ins. Exch. V. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006); and then citing *Rayle Tech, Inc. v. DeKalb Swine Breeders*, 133 F.3d 1405, 1409 (11th Cir. 1998)). The Policy between Plaintiff and Defendant contains a New York choice of law provision. (Doc. 1-1 at 27). Application of New York law to the contract at issue would not contravene Georgia public policy; however, New York has no substantial relationship with the parties or the transaction. Plaintiff is a Georgia corporation with its principal office located in Georgia, and Defendant is an Illinois

4

corporation with its principal office located in Illinois. (Doc. 1 ¶¶ 1–2). Moreover, the underlying Arbitration, held in Georgia, concerned a North Carolina project. (*Id.* ¶ 5; *see* Doc. 1-2 at 9). Furthermore, both Parties agree that the outcome in either jurisdiction—Georgia or New York—will be the same. (Doc. 7 at 7 n.3; Doc. 18 at 4 n.1). Therefore, the Court will apply Georgia law, notwithstanding the Parties' choice of New York law provision in the Policy.

"[U]nder Georgia law, the duty to defend an insured is separate and independent from the obligation to indemnify." *Elan Pharm. Rsch. Corp. v. Emps. Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998) (citing *Penn-Am. Ins. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997)). An insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved or the insured's liability is established. *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019). Here, Plaintiff's liability was established when the Arbitration panel issued its Arbitration Award in favor of Carolina. (*See* Doc. 1-2 at 69). Thus, Defendant's duty to indemnify is ripe.

Moreover, under Georgia law, "the parties to an insurance policy are bound by its plain and unambiguous terms." *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 722 S.E.2d 923, 925 (Ga. Ct. App. 2012) (citation omitted). A court may not "strain to extend coverage where none was contracted or intended." *Id.* at 926 (citation omitted). "[A]n insurer seeking to invoke a policy exclusion carries the burden of proving its applicability in a given case." *First Specialty Ins. Corp., Inc. v. Flowers*, 644 S.E.2d 453, 455 (Ga. Ct. App. 2007) (citation omitted). An insurer can carry this burden by "relying exclusively upon the allegations against the insured in the underlying complaint." *Id.* (citation omitted). Because the Arbitration Award explicitly provided that damages were not imposed on Plaintiff for anything other than Carolina's breach of contract claim and because the Policy's definition of damages specifically excludes "damages awards for breach of contract[,]" the Arbitration Award is not covered under the Policy. (Doc. 1-1 at 40, 44; Doc. 1-2 at 68–71).

Contrary to Plaintiff's argument that "the Court cannot be bound by the arbitrary legal theory assigned by an unaffiliated Arbitration [p]anel in finding liability against [Plaintiff] and in favor of . . . Carolina[,]" under Georgia law, the doctrines of claim and

5

issue preclusion apply to arbitration proceedings. (Doc. 18 at 10); *Bennett v. Cotton*, 536 S.E.2d 802, 804 (Ga. Ct. App. 2000) (citation omitted). Preclusion doctrines apply "even if some new factual allegations have been made, some new relief has been requested, or a new defendant has been added." *Bennett*, 536 S.E.2d at 804 (citation omitted). Plaintiff was given a full and fair opportunity to litigate Carolina's breach of contract claim against it in the underlying Arbitration, and Plaintiff was found liable for breach of contract. (Doc. 1-2 at 68). Plaintiff cannot now relitigate this issue.

Accordingly, Plaintiff has failed to state a claim for which relief can be granted, and Defendant's Partial Motion to Dismiss (Doc. 7) is **GRANTED**.

## II.     Motion for Hearing

Defendant's Motion for Hearing "requests a hearing on its Partial Motion to Dismiss[.]" (Doc. 8 at 1). Neither the Federal Rules of Civil Procedure nor the Court's local rules entitle litigants to oral argument on motions to dismiss. *See Coney v. Macon-Bibb County*, No. 5:19-cv-00145-TES, 2019 WL 13098500, at *1 (M.D. Ga. June 6, 2019) (citations omitted) (collecting cases); M.D. Ga. L.R. 7.5 (explaining that courts in this district decide all motions "without a hearing unless otherwise ordered by the court on its own motion or in its discretion upon request of counsel"). As set forth above, the Court has resolved the Partial Motion to Dismiss based on the filings. Thus, a hearing is unnecessary, and Defendant's Motion for Hearing (Doc. 8) is **DENIED**.

### CONCLUSION

Accordingly, Defendant's Partial Motion to Dismiss (Doc. 7) is **GRANTED** and Defendant's Motion for Hearing (Doc. 8) is **DENIED**.

**SO ORDERED**, this 11th day of February, 2026.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

6